NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210088-U

NO. 4-21-0088

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 16, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| PARIS J. BARKER, | ) | No. 17CF494 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the trial court did not abuse its discretion when it resentenced defendant following the revocation of her probation to the minimum term of three years in prison for the Class 2 felony offense of identity theft.

¶ 2    Defendant, Paris J. Barker, appeals from the trial court's judgment sentencing her to three years in prison for the Class 2 felony offense of identity theft (720 ILCS 5/16-30(a)(1), (e)(1)(A)(iii) (West 2016)). She argues the court abused its discretion when it resentenced her based on her conduct while on drug court probation rather than on the underlying offense. The State argues the court did not abuse its discretion and its sentence was proper. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4    On April 18, 2017, the State charged defendant with three counts of identity theft—of which two were Class 2 felonies and one was a Class 3 felony, depending on the value of the

property stolen. See *id.* §§ 16-30(a)(1), (e)(1)(A)(iii), (e)(1)(A)(ii). The State alleged defendant knowingly used another person's name, information, and credit card to obtain credit from various third parties.

¶ 5         On January 11, 2018, defendant advised the trial court she wished to participate in drug court probation. The court thoroughly explained the conditions of drug court and the expectations of defendant. She agreed, indicated she had consulted with her attorney, and had no questions regarding the program. Defendant pleaded guilty to one count—a Class 2 felony. The court advised defendant the possible sentence for a Class 2 felony was "not less than three nor more than seven years in the penitentiary." Defendant stated she understood.

¶ 6         The State provided the following factual basis for defendant's plea. On May 16, 2015, defendant used Perry Beal's credit card without his permission to pay her bond in a pending Champaign County traffic case. Defendant also made recorded jail calls to an unknown party giving Beal's name and credit card number. On May 19, 2015, Beal was informed by One Main Financial that a $10,000 loan was opened by defendant in his name. Defendant also used Beal's information to pay a lease, a Verizon Wireless bill, and an Ameren Illinois bill, totaling $3331.07.

¶ 7         The court accepted defendant's guilty plea and, pursuant to the plea agreement, placed defendant on 48 months' drug court probation.

¶ 8         On June 5, 2019, the trial court entered an order of imprisonment for 180 days after defendant was found to have benzodiazepines in her system because of medication administered while she was in the county jail. She admitted to telling jail personnel, when asked, that she was "still taking medication." Based on defendant's intentional misrepresentation to jail personnel, the court ordered her into custody and to write an essay. Defendant submitted a letter to the court

admitting she had lied to jail personnel. Given defendant's confession of deceit, the court allowed her to be released from jail.

¶ 9        However, on August 17, 2020, the State filed a petition to revoke defendant's probation because she had violated multiple conditions. The State alleged defendant's urinalysis testing submitted on August 4, 2020, returned positive for tramadol and fentanyl. The State further alleged defendant failed to submit specimens "as directed" on May 13, 2020, May 20, 2020, and August 4, 2020. The State later advised the court it was proceeding only on defendant's failure to submit on May 13, 2020.

¶ 10        On September 9, 2020, the trial court conducted a hearing on the State's petition. Mark Dotson, the case manager for the drug court team at Rosecrance, testified defendant "did not show for a drop nor did she call to inform us that she had any obstruction to making it on time for the drop" on May 13, 2020.

¶ 11        Caren Cohen-Heath, an addiction counselor at Rosecrance, testified she performed the urinalysis of defendant on August 4, 2020. Defendant tested positive for tramadol, fentanyl, and opiates.

¶ 12        Zac Dawkins, the problem-solving court coordinator for Champaign County, testified he determined who submitted to drug drops on any day. Dawkins testified defendant was required to submit on May 13, 2020. His duties also included retrieving positive samples from Rosecrance and delivering them to the probation department. He said he retrieved a positive sample from defendant's August 4, 2020, drop.

¶ 13        Heather Rumple, an officer with the Champaign County Probation and Court Services Department, testified she performed confirmation of positive or borderline drug tests from

Rosecrance. On August 6, 2020, she tested defendant's sample submitted on August 4, 2020, and confirmed, with two tests, the sample was positive for tramadol and fentanyl.

¶ 14        The trial court continued the hearing to allow defendant the opportunity to present a witness from a private testing agency. On November 9, 2020, the hearing resumed. At the State's request, the court took judicial notice of "the court file in this case, the drug court order, and the conditions of [defendant's] drug court probation, as well as the fact that tramadol and fentanyl are controlled substances."

¶ 15        Defendant presented the testimony of Liaqat Ali Abbas, a stipulated expert with the United States Drug Testing Laboratories, Inc. Dr. Abbas testified he was in possession of defendant's hair sample, taken on September 16, 2020, which was tested for "amphetamines, barbiturates, benzodiazepines, cocaines, methadones, meperidine, opiates, phenylcyclohexyl piperidine, oxycodone, proposyphene, cannabinoids, tramadol, fentanyl, and sufentanil." The sample was negative for all drugs except cannabinoids. The test was "presumptive positive" but there was not enough of a sample to test for a confirmatory test. He said these drugs stay in the hair for "up to about 90 days for this test" but would degrade more quickly with hair coloring or the like. Abbas also testified the hair test was not ideal to prove a single use. That is, he said, a urine test would be more accurate to determine whether a person consumed a particular drug on a particular day. Abbas testified: "Again, a hair test would not pick up a single use" for any drug.

¶ 16        Defendant testified she had been clean from opiates since September 11, 2017. When she was advised she had tested positive on August 4, 2020, she was glad to hear Rosecrance would be sending the sample to Rumple because "they ha[d] the machine there to test it." She denied using any drugs except the one she was given in jail in May 2019 to help her sleep. She

said: "I would never jeopardize anything I have going on for fentanyl or tramadol." She also denied getting any treatments done on her hair.

¶ 17        After considering the evidence and arguments of counsel, the trial court found the State had proved by a preponderance of the evidence defendant had violated the terms of her probation by not submitting to testing on May 13, 2020, and testing positive for controlled substances on August 4, 2020.

¶ 18        On January 4, 2021, the trial court held the resentencing hearing and noted it had received and reviewed the presentence report dated December 29, 2020. Defendant testified she was 36 years old with five daughters between the ages of 11 and 18. She had been employed full time at Dart Solo Cup since October 2018. She started drug court probation in January 2018 and had been clean from opiates since October 2017. Defendant reiterated the circumstances relating to her August 4, 2020, positive drug test, indicating she sought additional testing. She then acknowledged she also had a tramadol- and fentanyl-positive drug test on December 3, 2020. She traveled to Springfield for a re-test the next morning. Those results were negative. On December 8 or 9, 2020, defendant visited her physician for bloodwork. They did a rapid test which also came back positive for tramadol and fentanyl. The physician sent the results to Aegis Laboratory and the re-test results were negative. Defendant said she had "never taken tramadol or fentanyl in [her] life." Defendant testified at the time she first tested positive in August 2020, she was two months from graduating.

¶ 19        The State asked the trial court to sentence defendant to five years in prison on her identity theft conviction. Defense counsel asked for another chance in drug court or, in the alternative, another community-based sentence.

¶ 20		In allocution, defendant admitted to always being an addict but because of drug court, she was doing so good. She was employed and took care of her five daughters. She was doing well at work, was current on her rent, and was actively helping her daughters with online schooling. She was "just confused" as to why she kept testing positive when she had not taken any controlled substances. She was "trying to do [her] best by [her] kids, by drug court and by everything."

¶ 21		The trial court indicated it had considered the (1) factual basis for the plea, (2) petition to revoke "as well as the factual basis of that," (3) presentence report, (4) statutory sentencing factors, and (5) arguments of counsel and defendant. The court made the following observations. First, the court specifically noted defendant was not being sentenced "because of her conduct on probation." Rather, she would be sentenced on the underlying Class 2 felony offense of identity theft. The court noted it was a probationable offense but also "carrie[d] anywhere from three to seven years in prison."

¶ 22		The trial court noted the relevant factors in mitigation included defendant's guilty plea, her employment, her dependent daughters, the fact her actions had not threatened harm to anyone, and her ongoing medical conditions. The noted factors in aggravation included the need for deterrence, defendant's criminal history, and her recent criminal activity. Apparently, after being placed in drug court in January 2018, defendant committed and was convicted of at least three driving-related misdemeanors and one Class 4 felony retail theft.

¶ 23		The trial court indicated this was "a very difficult case for the court" due to defendant's status as a full-time reliable employee at her job and her status as a single parent to five daughters. The court considered defense counsel's "most powerful argument" that it was "absolutely" possible defendant used fentanyl and tramadol "once in a while" but generally, those

who use these "pretty darn addictive drug[s]," were unable "to hold down a full-time job and care for their children." The court also referenced the fact defendant was sanctioned in drug court for being deceitful when she advised jail personnel she needed medication and accepted Xanax.

¶ 24     The trial court mentioned defendant's positive drug drops in August and December 2020 and her failure to test in October 2018, March 2020, and May 2020. The court recalled defendant's issues with and challenges to the testing procedures, which, it noted, she had an "absolute right to do." However, the court, after considering the State's evidence, had declared the process and procedures were reliable and relevant, and, accordingly, found defendant "did, in fact, use tramadol or fentanyl."

¶ 25     The trial court stated the following:

"This is a very troubling case for the court because [defendant] has done most everything she's supposed to do on drug court. She has appeared in court all the time. She missed drops four or five times, which oftentimes suggests to the team that somebody may be going back into old habits and they didn't want to take a test, and now we have two drug tests that are positive, she contests them, which is her right, that suggests that she has fallen back into old ways.

I'm not sure what, if anything, drug court has to offer her other than coming to court every week and drug testing her. It's a lot of resources that we provide to her that could be used on other individuals who are in need of treatment and counseling.

[The prosecutor] argues that this is not so much about drug use but about honesty and I agree. This is a case where the original charge had to do with a crime of deception, identity theft. She has a theft in 2016 as well. Since she's been on

probation, she committed a retail theft with a prior theft conviction. This is also not just about honesty, it's also about complying with court orders. *** Kind of boggles my mind that there were not petitions to revoke filed based on all of these driving while suspendeds [*sic*] and the retail theft. Not holding it against her was a decision that was made by the team back then, but not now, but she continues to commit offenses and she still even has a pending case now.

She has young children, which I'm very sympathetic for.

\* \* \*

I don't want to send [defendant] to prison. I really don't. To a great extent, she has done well in drug court. *** The truth of the matter is when the court finds somebody has violated probation, tested positive, and then I look at the record and see since she's been on probation she has committed offenses after offenses, including a felony offense, I think about what is her rehabilitative potential. There's really very little drug court can provide here for her that she already hasn't received. And the truth of the matter is, even if I didn't give her drug court and I have her straight probation, there has to be some consequence for the noncompliance because I don't think she can complete probation[.] [H]er rehabilitative potential has been markedly reduced by the fact that she's committed new offenses and violating her probation[.] ***.

***

I think that having regard to the nature and circumstances of the offense and to the history, character and rehabilitative potential of the defendant, the court does find, based on the unique circumstances of [defendant]'s case, that a

community[-]based sentence would deprecate the seriousness of her conduct and be inconsistent with the ends of justice. The minimum period in prison is the appropriate sentence. I hereby sentence her to three years in prison."

¶ 26 On February 1, 2021, defendant filed a motion to reconsider sentence, arguing her sentence was excessive considering her family situation and other factors. She claimed the trial court put too much weight on her criminal history and testimony in aggravation and too little weight on her potential for rehabilitation and lack of violent history. Defendant did not specifically argue, like she does on appeal, that the trial court sentenced her based on her conduct on probation, rather than on the underlying offense.

¶ 27 At a February 11, 2021, hearing, the trial court denied defendant's motion to reconsider.

¶ 28 This appeal followed.

¶ 29 II. ANALYSIS

¶ 30 Defendant argues the trial court abused its discretion in resentencing her to three years in prison. She claims (1) the court's sentence was excessive "under the circumstances," (2) the court erred by not imposing another term of drug court probation when she had, for the most part, been successful, and (3) the court erroneously sentenced her for her conduct on probation, not for the underlying offense. We disagree and affirm defendant's sentence.

¶ 31 A. Plain Error

¶ 32 Initially, we note defendant concedes she failed to raise these specific issues in her postsentencing motion and, as a result, has forfeited appellate review. However, she asks this court to review her claims despite her forfeiture under either prong of the plain-error doctrine. Namely, she claims first, the evidence at the sentencing hearing was so closely balanced the purported errors

may have impacted the severity of the sentence, and/or second, the errors were so egregious she was denied a fair sentencing hearing. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). As the State points out, the first step of a plain-error analysis is to determine whether a clear or obvious error occurred. *Id.* at 545.

¶ 33                                    B. Standard of Review

¶ 34          After revoking a sentence of probation, the trial court may resentence a defendant to any sentence that would have been appropriate for the original offense. *People v. Young*, 138 Ill. App. 3d 130, 134-35 (1985). See also 730 ILCS 5/5-6-4(e) (West 2020) (stating that upon a finding of a violation of a condition of probation, the trial court may continue a defendant on the existing sentence or impose any other sentence originally available). A sentencing court's decisions are entitled to great deference. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. The court's decision must be based on the particular circumstances of each case, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age as well as the applicable statutory factors in mitigation and aggravation. *Id.*

¶ 35          A reviewing court will reverse a trial court's sentencing decision only if it is found to be an abuse of discretion. *Id.* Generally, a sentence within the statutory limits will not be deemed an abuse of discretion unless it is " 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *Id. (*quoting *People v. Fern,* 189 Ill. 2d 48, 54 (1999) and *People v. Alexander,* 239 Ill. 2d 205, 212 (2010)). When considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for the trial court's merely because it would have weighed the factors differently. *Fern*, 189 Ill. 2d at 53.

¶ 36                                    C. Excessive Sentence

¶ 37    In this case, defendant was convicted of identity theft, a Class 2 felony offense and, as a result, was subject to a sentencing range of three to seven years in prison. See 720 ILCS 5/16-30(a)(1); (e)(1)(A)(iii) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020). Originally, the trial court sentenced defendant to 48 months' drug court probation. Upon revocation of that probation, at resentencing, the court sentenced her to three years in prison. Defendant claims the court abused its discretion by refusing to sentence her to another term of drug court probation. She claims a three-year prison term was excessive, given she was mostly successful during her latest term of probation.

¶ 38    The imposition of the three-year sentence was the minimum allowable term of imprisonment for a Class 2 felony. The State recommended a five-year term despite its representation to the trial court that defendant "ha[d] not ever done anything particularly horrible." However, the prosecutor emphasized defendant's "tradition" of deceit, which "stretche[d] back to her first retail theft in 2014" and continued through her drug court probation.

¶ 39    The trial court noted it considered the following factors in mitigation. First, defendant originally pleaded guilty to the underlying offense. Second, she was employed full time. Third, she had children who are dependent upon her. Fourth, her actions had not threatened harm to anyone. Fifth, she suffered from diabetes and other medical conditions.

¶ 40    The trial court also noted two factors in aggravation. First, the court considered the need for deterrence. Second, defendant had a "history of criminality" and was "still committing offenses while she's on probation."

¶ 41    The trial court stated "this is not so much about drug use but about honesty and I agree [with the prosecutor]. This is a case where the original charge had to do with a crime of deception, identity theft." The court questioned defendant's rehabilitative potential, given her

history of continued offenses, even while on probation, stating defendant's "rehabilitative potential has been markedly reduced." Due to "the nature and circumstances of the offense and to the history, character[,] and rehabilitative potential of the defendant, the court [did] find, based on the unique circumstances of [defendant]'s case, that a community[-]based sentence would deprecate the seriousness of her conduct and be inconsistent with the ends of justice. The minimum period in prison [was] the appropriate sentence."

¶ 42    Here, the trial court acknowledged and carefully considered the factors in mitigation and aggravation, specifically noting defendant's failure to show rehabilitative potential. That is, probation had not deterred defendant's criminal behavior. The court's comments reflect it ultimately gave more weight to the aggravating factors on resentencing. Because the court's imposition of the minimum term of three years in prison and its refusal to impose another term of probation was not greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense, we find the court did not abuse its discretion. Having found no error, there can be no plain error and we must honor defendant's procedural default.

¶ 43                    D. Factors Considered at Resentencing

¶ 44    Defendant also claims the trial court improperly considered her conduct on probation, rather than the underlying offense, as the primary basis for the imposition of a three-year prison term. The court may consider at resentencing defendant's conduct on probation in assessing her rehabilitative potential. *People v. Turner*, 233 Ill. App. 3d 449, 456 (1992). That is, "it is appropriate for a defendant who conducts [her]self poorly while on probation to receive a more severe sentence than [s]he originally received." *People v. Palmer*, 352 Ill. App. 3d 891, 895 (2004). However, the court may not punish a defendant for conduct that was the basis for the revocation of probation. *People v. Young*, 138 Ill. App. 3d 130, 142 (1985). "[A] sentence within the statutory

range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphases in original.) *Id.*

¶ 45 Based on our review of the record, we are not persuaded the trial court imposed the minimum prison term on defendant as punishment for her conduct on probation. Contrary to defendant's claim in her brief, the court specifically indicated on at least two occasions during the sentencing hearing it was imposing the sentence for the underlying offense, not for her conduct on probation. At the beginning of the hearing, the court stated: "First, [defendant] is not being sentenced because of her conduct on probation. This is a resentencing *for the underlying offense* of the class 2 felony of identity theft." (Emphasis added.) The court later stated: "I think that having regard to the *nature and circumstances of the offense*[,] *** a community[-]based sentence would deprecate the seriousness of her conduct and be inconsistent with the ends of justice. The minimum period in prison is the appropriate sentence." (Emphasis added.)

¶ 46 Given the trial court's explicit indication and explanation for the basis of the sentence and, given the sentence is the minimum term of the statutory range for the original offense, we find no sentencing error. That is, we are not strongly persuaded the sentence imposed after revocation of probation was in fact imposed as a penalty for the conduct which was the basis for the revocation. Defendant has failed to establish the court considered her conduct on probation for any purpose other than assessing her rehabilitative potential. Again, because we find no error, there can be no plain error, and we must honor defendant's procedural forfeiture.

¶ 47                                III. CONCLUSION

¶ 48 For the reasons stated, we affirm the trial court's judgment.

¶ 49        Affirmed.