NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230243-U

NOS. 4-23-0243, 4-23-0244 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jersey County |
| RICHARD D. GANSZ, | ) | Nos. 20CF89 |
| Defendant-Appellant. | ) | 21CF79 |
| | ) | |
| | ) | Honorable |
| | ) | Allison Lorton, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Steigmann and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court vacated and remanded for a new sentencing hearing, concluding the trial court committed plain error when it improperly sentenced defendant based on (1) his conduct while on conditional discharge and (2) the mistaken belief he was eligible for extended-term sentencing.

¶ 2    Defendant, Richard D. Gansz, appeals from the Jersey Count circuit court's judgments in case Nos. 21-CF-79 and 20-CF-89, which this court docketed for appeal as appellate court case Nos. 4-23-0243 and 4-23-0244, respectively. In July 2023, this court granted a motion to consolidate the two cases. On appeal, defendant argues (1) the trial court abused its discretion when it sentenced him to two consecutive two-year sentences based primarily on his conduct while on conditional discharge and not for the original offense, (2) the trial court erroneously believed defendant was eligible for extended-term sentencing, and (3) to the extent the aforementioned

issues have been forfeited, they constitute plain error, or alternatively, trial counsel was ineffective for failing to preserve these allegations of error. The State responds (1) the trial court's belief defendant was extended-term eligible was not erroneous, or in the alternative, amounted to harmless error because defendant did not receive an extended-term sentence, (2) the court did not abuse its discretion when it sentenced defendant to two consecutive two-year sentences for domestic battery because the sentences were within the standard statutory sentencing range for Class 4 felonies, and (3) defendant's trial counsel was not ineffective for failing to preserve the aforementioned issues for appeal. We vacate defendant's sentences and remand for a new resentencing hearing.

¶ 3                                    I. BACKGROUND

¶ 4                        A. Original Charges and Sentencing

¶ 5        In June 2020, the State charged defendant with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2020)) in Jersey County case No. 20-CF-89. The information alleged defendant caused bodily harm to B.D., a household or family member, in that he punched her in the face multiple times. In March 2021, while awaiting trial in case No. 20-CF-89, the State charged defendant with domestic battery (*id.*) in Jersey County case No. 21-CF-79. The information alleged defendant shot B.D. with a BB gun. The charging documents filed in each case stated the charge was a Class 4 felony based on defendant having been previously convicted of domestic battery on July 9, 2012, in Jersey County case No. 12-CF-32. Additionally, both charging documents further stated the sentencing range included "(1-3 years [in the Illinois Department of Corrections (IDOC)], 1-6 years extended-term eligible, one (1) year mandatory supervised release), probation or conditional discharge not to exceed 30 months, periodic imprisonment not to exceed 18 months."

¶ 6        In March 2021, defendant signed a jury trial waiver and guilty plea form in both cases. At the sentencing hearing, the parties informed the trial court that in exchange for defendant's plea of guilty in both cases, defendant would be sentenced to consecutive terms of two years in prison, to be "stayed" pending defendant's successful completion of two years' conditional discharge. The court accepted defendant's plea and entered a written sentencing order. In the order, the court checked a box indicating defendant was sentenced to "conditional discharge." In lines provided next to a box stating, "Other," the court wrote, "Defendant sentenced to 2 years' each mandatory consecutive in IDOC. Sentence stayed successful completion of conditional discharge."

¶ 7                    B. Petition to Revoke and Motions to Lift Stay

¶ 8        In June 2021, the State filed a petition to revoke defendant's conditional discharge. The petition alleged defendant violated the terms of his conditional discharge when he received citations for driving while his license was revoked and driving an uninsured vehicle in Jersey County case Nos. 21-TR-1434 and 21-TR-1435, respectively.

¶ 9        Later in June 2021, the State filed a motion to lift the IDOC stay. In the motion, the State asserted in Jersey County case Nos. 20-CF-89 and 21-CF-79 (the domestic battery cases), defendant had been sentenced to two consecutive terms of two years in prison, which were stayed pending defendant's completion of conditional discharge. The State further asserted defendant violated the terms of his "Probation" when he was charged in Jersey County case Nos. 21-TR-1434 and 21-TR-1435. Based on this violation, the State requested the stay be lifted and defendant remanded to IDOC custody.

¶ 10        In May 2022, the State filed a second motion to lift the IDOC stay. In addition to the previously mentioned traffic citations, the amended motion asserted defendant violated his

- 3 -

conditional discharge in the domestic battery cases when he was charged with two counts of unlawful delivery of methamphetamine in Jersey County case No. 22-CF-52. The charges alleged the offenses occurred in January 2022. The amended motion requested the stay be lifted in the domestic battery cases and defendant be remanded to IDOC custody.

¶ 11 In December 2022, the State filed a third motion to lift the IDOC stay. In addition to the traffic citations and unlawful delivery of methamphetamine charges, the State asserted, on December 22, 2022, defendant had been charged with violating an order of protection in Jersey County case No. 22-CM-154. The State again requested the stay be lifted in the domestic battery cases and defendant remanded to IDOC custody.

¶ 12 In January 2023, the State filed an amended third motion to lift the IDOC stay. In addition to the traffic citations, unlawful delivery of methamphetamine charges, and violation of an order of protection, the State asserted, in January 2023, defendant had been charged with threatening a public official (Jersey County case No. 23-CF-2), unlawful possession of methamphetamine, and unlawful possession of drug paraphernalia (Jersey County case No. 23-CF-3).

¶ 13                                    C. Hearing

¶ 14 The trial court conducted a hearing on the State's amended third motion to lift IDOC stay and petition to revoke defendant's conditional discharge on January 13, 2023.

¶ 15 The State informed the court it intended to proceed on the portion of the motion to lift IDOC stay alleging defendant violated the terms of his conditional discharge when he was charged with unlawful possession of methamphetamine and unlawful possession of drug paraphernalia in Jersey County case No. 23-CF-3.

¶ 16 Before proceeding with the State's first witness, the trial court addressed defendant as follows:

"The State has the burden which is preponderance of the evidence standard that you committed the violation of the alleged violation of your conditional discharge. *** At this hearing, if I find the State has not proven that you violated a term of your conditional discharge then the petition is dismissed and your conditional discharge continues. However, at that hearing, if I *** find the State has proven by a preponderance of the evidence that you have violated a term of your conditional discharge you—the matter will be set down for sentencing. Now, if I recall, we had, pursuant to the plea, it was two years consecutive—

***

THE COURT: —total of four in 20-CF-89 and 21-CF-79. However, I do have to advise you, pursuant to Supreme Court Rule, [defendant], the sentence to be imposed is within the discretion of this Court and the possible range of sentence that you face, I believe both of these are class four felonies, extended term eligible. So, actually a maximum of six years if they are consecutive. Six years each. So, a maximum of a total of 12."

¶ 17 The State called Deputy Kevin Ayres to testify. Ayres testified that while on duty with Deputy Michael Klunk on January 6, 2023, around 2 to 2:30 p.m., they were looking for defendant to execute a warrant. They proceeded to defendant's home, where they knocked on his door but received no answer. While driving in the area, Ayres saw defendant cross the highway on his bicycle with two other individuals also riding their bikes. Ayres attempted to stop defendant by activating his lights and yelling out the window for him to stop. At first, defendant did not stop

but instead turned around and proceeded in the opposite direction. Ayres exited his car and yelled again for defendant to stop, which he did. Ayres approached defendant and advised him he was under arrest pursuant to the warrant. According to Ayres, defendant started pulling away and resisting, so Ayres walked him over to his vehicle and started to pat him down. While searching defendant's pockets for weapons, Ayres found a glass pipe that had white residue "and everything in it." Deputy Klunk searched a fanny pack attached to defendant's bike and found a brown pill bottle containing two small, clear baggies of cannabis, a "one hitter" cannabis pipe, and a small, clear bag of suspected methamphetamine. Ayres conducted field tests on the suspected methamphetamine, which came back positive for methamphetamine.

¶ 18     Defendant testified, on the day of his arrest, he was biking with his friends around 1 p.m. Defendant testified he had "nothing" on him when stopped by the police. According to defendant, officers searched him multiple times, and when Ayres came back to search him an additional time, "[H]e comes up with what he says is a pipe. *** [Ayres] didn't find nothing on my person."

¶ 19     The trial court found Ayres's testimony was credible and the State had shown by a preponderance of the evidence defendant violated his conditional discharge when he was charged with unlawful possession of methamphetamine and unlawful possession of drug paraphernalia. The court then set the two cases for a resentencing hearing.

¶ 20                    D. Motion to Withdraw Plea and Sentencing

¶ 21     On February 8, 2023, defendant filed a motion to withdraw his guilty plea in the domestic battery cases.

¶ 22     The trial court conducted a hearing on March 8, 2023. At the beginning of the hearing, the State orally moved to dismiss defendant's pending motion to withdraw his guilty plea,

asserting it was untimely because it was not filed within 30 days of the date defendant entered the plea. The court agreed and dismissed the motion.

¶ 23 The trial court then proceeded to the matter of resentencing. The court admonished defendant the sentencing range for each domestic battery offense was one to three years in prison. The court advised defendant he was extended-term eligible, meaning he faced a maximum sentence of six years in prison for each offense. Additionally, defendant could be sentenced to probation or conditional discharge not to exceed 30 months, periodic imprisonment not in excess of 18 months, and a fine of up to $25,000. Further, the sentences were required to be served consecutively.

¶ 24 In mitigation, defense counsel explained defendant was no longer in a relationship with the alleged victim, B.D. Defense counsel asserted a sentence of probation was appropriate in these cases.

¶ 25 In response, the State recommended a sentence to IDOC based on defendant's presentence investigation (PSI) and overall criminal history,

"which has included a number of crimes of violence in the past as well as the charges themselves being crimes of violence and the fact that [defendant] has been charged with at least—one, two, three additional felonies, two misdemeanors and some traffics subsequent to pleading to the charges before the Court."

The State also argued defendant previously agreed to serve two years in prison for each charge, "mandatory consecutive for four years."

¶ 26 Defense counsel again argued for probation, explaining defendant was making progress, trying to get work, and "got his life clean." The State countered it would recommend a longer prison sentence because defendant incurred new charges while on conditional discharge,

and "if the defendant is allowed to argue for less than he had agreed to, the State should be allowed to argue for more."

¶ 27    The trial court explained it was "not bound" by the stayed sentences to which defendant previously agreed. Specifically, the court stated its interpretation of the rules when resentencing on a petition to revoke was that a defendant can be resentenced to any available sentence within the statutory range. It then stated it considered the factual basis and the PSI. The court also acknowledged defendant had never been sentenced to IDOC but had previously received two community-based sentences: one was terminated successfully, and one was not. Before pronouncing defendant's sentence, the court stated, "What's most disturbing or what is most aggravating, I should say, in terms of an aggravating factor for this Court is the level of criminality that has taken place since [defendant] had [pleaded] guilty to these charges of domestic battery." Additionally, the court expressed defendant was not a good candidate for another community-based sentence because he "continues to fail to take responsibility for his own actions and blame others for his conduct particularly the victim in both of these domestic batteries." The last factor the court considered was the underlying offenses to which defendant was being resentenced were crimes of violence "with an identifiable victim to which there's continuing charges." Ultimately, the court stated it was "time for [defendant] to take responsibility and be accountable for his actions" and sentenced defendant to two consecutive terms of two years in IDOC.

¶ 28    This appeal followed.

¶ 29                            II. ANALYSIS

¶ 30    Defendant presents three arguments on appeal. First, he argues the trial court abused its discretion when it sentenced him to two consecutive two-year sentences based primarily on his conduct while on conditional discharge and not for the original offenses. Next, defendant

claims the trial court erroneously believed he was extended-term eligible, warranting a remand for resentencing. Finally, to the extent the previously mentioned issues have been forfeited, defendant asserts they constitute plain error, or alternatively, his trial counsel was ineffective for failing to preserve these allegations of error. The State responds the trial court's belief defendant was extended-term eligible was not erroneous, or in the alternative, amounted to harmless error because defendant did not receive an extended-term sentence. The State also contends the court did not abuse its discretion when it sentenced defendant to two consecutive two-year sentences for domestic battery because the sentences were within the standard statutory sentencing range for Class 4 felonies. Furthermore, the State asserts defendant's trial counsel was not ineffective for failing to preserve the two issues for appeal.

¶ 31                                    A. Plain Error

¶ 32          Defendant acknowledges his trial counsel failed to preserve the two claims he now raises on appeal. We agree defendant forfeited these issues by failing to contemporaneously object or raise them in a postsentencing motion. Defendant nonetheless asserts this court should review his claims for plain error under Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). Under the rule, this court may review an unpreserved issue for plain error on appeal when "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). In conducting this analysis, the first step is to determine whether a clear or obvious error occurred. *Id.* Accordingly, this court will first address whether defendant's claims constituted clear or obvious errors.

¶ 33                    1. *Defendant's Conduct on Conditional Discharge*

¶ 34 Defendant first claims the trial court erred when it sentenced him to consecutive terms of two years in prison based on his conduct while on conditional discharge, rather than for the underlying offenses. The State responds the sentence did not constitute an abuse of discretion because the court considered the underlying offenses when fashioning the sentence. We agree with defendant.

¶ 35 Generally, the same principles governing the revocation of probation also govern the revocation of conditional discharge. See 730 ILCS 5/5-6-4 (West 2022); *People v. Tufte*, 253 Ill. App. 3d 583, 585 (1993), *rev'd on other grounds*, 165 Ill. 2d 66 (1995). In *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009), the Second District explained the procedure for resentencing after the revocation of a defendant's probation or conditional discharge as follows:

> "A reviewing court may not overturn the sentencing decision of a trial court absent an abuse of the trial court's discretion. [Citation.] When sentencing, a trial court may properly consider a defendant's conduct while on probation as evidence of rehabilitative potential. [Citation.] In doing so, it may even give the defendant a more severe sentence than it originally imposed. [Citation.] But a trial court may never punish a defendant for the conduct that gave rise to the probation violation. [Citation.] *** In general, a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of the revocation, and *not* for the original offense. [Citations.]" (Emphases in original and internal quotation marks omitted.)

Stated another way, the new sentence "cannot punish the defendant for *anything other* than the original underlying offense." (Emphasis added.) *People v. Witte*, 317 Ill. App. 3d 959, 963 (2000).

¶ 36     In assessing whether error occurred here, we find *Varghese* to be instructive. In that case, the defendant pleaded guilty to aggravated criminal sexual abuse and was sentenced to sex offender probation. *Varghese*, 391 Ill. App. 3d 868. The State later filed a petition to revoke the defendant's probation based on a traffic violation, which the trial court granted. *Id.* At the defendant's resentencing hearing, the State presented several witnesses in aggravation, who testified about the defendant's conduct while on probation. *Id.* at 868-71. Specifically, the witnesses alleged the defendant attempted to meet with a 16-year-old girl during his sex offender probation. *Id.* at 868-71. In fashioning the defendant's new sentence, the trial court stated it had considered the statutory factors in aggravation and mitigation, the PSI, and the arguments of the parties. *Id.* at 872. Ultimately, the trial court resentenced the defendant to the statutory maximum of seven years in prison, explaining as follows:

> " 'THE COURT: *** [F]rom all the evidence that's been presented *** there can be no doubt but that [defendant] while on sex offender probation attempted to meet with a 16 year old girl for the purpose of having sex. There is no doubt in my mind ***. There is no doubt but that the defendant knew that this was a 16 year old girl that he was going to meet. *** I don't think there was any doubt but that *** the defendant knew this was a 16 year old girl.' "
>
> ***
>
> THE COURT: The bottom line is, we're here because of the conduct of the defendant, not because of what I did, not because of what the State did, not because of what the police did[.] *** [W]e're here considering the conduct of the defendant

and the conduct of the defendant indicates that the sex offender probation has had effectively no impact on him and that he was attempting to do again the same things that brought him back before me.' " *Id.*

The court also commented that "based on [the defendant's] conduct [while on probation], it was 'unlikely that [the defendant] has any future rehabilitative potential at this point in time.' " *Id.*

¶ 37 On appeal, the defendant argued the trial court erred when it resentenced him based on his conduct while on probation instead of the underlying offense, and the Second District agreed. *Id.* at 876. The Second District first acknowledged the court (1) sentenced the defendant within the statutory range, (2) considered the evidence presented, and (3) related the defendant's conduct while on probation to his rehabilitative potential. *Id.* at 876-77. However, the Second District ultimately concluded that "the remarks of the trial court in their totality clearly indicate that it never expressly considered defendant's original offense when fashioning his sentence." *Id.* at 877. Instead, "by focusing on defendant's conduct while on probation," the court "improperly commingled uncharged conduct with his original offense." *Id.* Accordingly, the Second District vacated the defendant's sentence and remanded for a new sentencing hearing. *Id.*

¶ 38 Here, we conclude the record shows the trial court sentenced defendant based on his conduct while on conditional discharge instead of the underlying offenses. First, while the trial court in *Varghese* at least related the defendant's conduct on probation to his lack of rehabilitative potential, the trial court in this case failed to do so. Compounding this failure, the court instead stated "the level of criminality that has taken place since [defendant] had [pleaded] guilty" was the "most disturbing" or "most aggravating" factor for it to consider. Essentially, the court not only considered an improper sentencing factor, but it admitted it justified a longer sentence—thereby punishing defendant for it. We acknowledge the court—like the court in *Varghese*—considered

other permissible factors, such as the PSI, defendant's prior criminal history, that this was a crime of violence with an identifiable victim, and whether another community-based sentence would deprecate the seriousness of the offense. However, like the *Varghese* court's extensive comments regarding the defendant's "intolerable" conduct while on probation (*id.* at 872), the combination of the trial court's comments in this case that (1) defendant's "level of criminality" was the most "aggravating factor" it considered, (2) defendant had never been sentenced to IDOC, and (3) it was "time for [defendant] to take responsibility and be accountable for his actions" strongly persuade this court defendant was being punished for his conduct while on conditional discharge instead of the underlying offenses. Accordingly, we find a clear or obvious error occurred for purposes of our plain-error analysis.

¶ 39                            2. *Extended-Term Eligibility*

¶ 40        Defendant next claims the trial court erred when it sentenced him on the mistaken belief he was extended-term eligible when he was not. The State argues defendant was extended-term eligible, claiming "[a] reasonable trial court could have properly imposed an extended term upon any of the aggravation factors that were noted at resentencing," citing factors enumerated in section 5-5-3.2(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(a) (West 2020)). The State alternatively argues, if an error occurred, it was nonetheless harmless because defendant did not receive an extended-term sentence. We address the State's alternative argument *infra* ¶ 48. We note our review of the record indicates neither the court nor the parties ever stated grounds to support a finding that defendant was eligible for extended-term sentencing, and further, it is not set forth in the charging documents.

¶ 41        Here, defendant was not eligible for extended-term sentencing. Under section 5-5-3.2(b)(1) of the Unified Code, a defendant is extended-term eligible "after having been

previously convicted *** of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction." 730 ILCS 5/5-5-3.2(b)(1) (West 2020). Here, defendant had been convicted of domestic battery in Jersey County case No. 12-CF-32, qualifying him for extended-term sentencing under the statute. See *id.* However, the sentencing court may not impose an extended-term sentence—despite a defendant's statutory eligibility—when it would constitute an improper double enhancement. See *People v. Chambers*, 2011 IL App (3d) 090949, ¶ 22. "A double enhancement occurs when (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence *** or (2) the same factor is used twice to elevate the severity of the offense itself." (Internal quotation marks omitted.) *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 66. Here, defendant's conviction in Jersey County case No. 12-CF-32 was used (1) as an element of the offenses *and* (2) to qualify defendant for an extended-term sentence. The State never amended the charging instrument or asserted some other basis to impose an extended-term sentence. Accordingly, defendant was not extended-term eligible.

¶ 42    Defendant's reply brief indicates—and this court agrees—the State's argument defendant *was* eligible for extended-term sentencing seems to conflate statutory aggravating factors (730 ILCS 5/5-5-3.2(a) (West 2020)) with factors used to qualify a defendant for extended-term sentencing (*id.* § 5-5-3.2(b)). Specifically, the State cites various factors enumerated in section 5-5-3.2(a) as grounds for the court to impose an extended-term sentence in this case. See *id.* § 5-5-3.2(a). However, those factors may be used only to impose a longer sentence *within the standard sentencing range*—not an extended-term sentence. Instead, as mentioned above, an extended term may only be imposed when a factor enumerated in section 5-5-3.2(b) is present.

Accordingly, we disagree with the State's claim defendant was extended-term eligible based on section 5-5-3.2(a)'s aggravating factors.

¶ 43　　　Generally, the trial court has broad discretion at sentencing, and a sentence within the statutory range for the offense will not be disturbed absent an abuse of discretion. *People v. Williams*, 303 Ill. App. 3d 264, 268 (1999). Here, defendant acknowledges he did not receive an extended-term sentence (three to six years in prison for each count) and his two-year sentences were within the standard sentencing range (one to three years in prison for each count). However, defendant nonetheless argues a clear and obvious error occurred because the court's mistaken belief he was extended-term eligible arguably influenced the sentence.

¶ 44　　　We find the Third District's decision in *People v. Myrieckes*, 315 Ill. App. 3d 478 (2000), to be instructive here. In *Myrieckes*, the defendant pleaded guilty to three counts and was sentenced to consecutive terms of 30, 30, and 20 years in prison, respectively, for an aggregate term of 80 years in prison. *Id.* at 479-80. At the defendant's guilty plea hearing, the trial court admonished the defendant he was eligible for extended-term sentencing if the victim in the case was 12 years old or younger. *Id.* at 480. On appeal, the defendant argued, *inter alia*, plain error occurred when the court sentenced him on the mistaken belief he was extended-term eligible. *Id.* at 483. The Third District first concluded the defendant was not extended-term eligible because the statute upon which the State relied required the victim to be *under* the age of 12 and the record showed she was not. *Id.* The Third District then acknowledged the defendant did not receive an extended-term sentence but considered whether the trial court's mistaken belief regarding his extended-term eligibility "arguably influenced the sentencing decision." *Id.* (citing *People v. Hurley*, 277 Ill. App. 3d 684, 687 (1996)). The Third District ultimately concluded it did. *Id.* at 484. Specifically, the Third District noted that while the trial court did not "indicate the sentencing

range or whether he believed [the] defendant was eligible for an extended-term," it appeared from the transcript of the sentencing hearing "that the parties so believed." *Id.* Furthermore, the State presented evidence in aggravation that one of the victims claimed to be 11 years old at the time the offense occurred. *Id.* Finally, the defendant's trial counsel argued for the sentence to be fashioned " 'without getting into extended sentences.' " *Id.* Accordingly, the Third District vacated the defendant's sentences and remanded for a new sentencing hearing. *Id.*

¶ 45 Here, we conclude the trial court's mistaken belief defendant was extended-term eligible arguably influenced the sentencing decision. First, both charging instruments in these consolidated cases indicated defendant was extended-term eligible. Furthermore, the court admonished defendant on multiple occasions he was extended-term eligible. At the revocation hearing, the court admonished defendant both charges were "class four felonies, extended term eligible," meaning he faced a maximum sentence of 6 years in prison on each count, for an aggregate maximum of 12 years in prison. At the resentencing hearing, the court again advised defendant he was extended-term eligible. Additionally, and like *Myrieckes*, the parties also incorrectly believed defendant was eligible for an extended term. After abandoning its previous recommendation of two years in prison on each count, the assistant state's attorney requested a sentence in the extended range, stating, "[G]iven the continued criminality that the defendant has shown the State would argue that the defendant should in fact, be sentenced to more than two years in each charge. State would argue it's *** more appropriate in the range of four to five years per charge, mandatory consecutive." Defendant's counsel requested probation and argued against the State's recommendation for a sentence in the four- or five-year range. Moreover, the court noted that while defendant had previously agreed to serve two years in prison on each count, it had the discretion to resentence him to any available sentence within the statutory range. Finally, the

written sentencing order also stated defendant's charges were "Class 4 Extended." Based on the court's repeated admonitions defendant was extended-term eligible, the State's recommendation of an extended-term sentence at resentencing, and the sentencing order itself, we conclude the court's mistaken belief defendant was extended-term eligible arguably influenced the sentencing decision. Accordingly, we conclude a clear error occurred for purposes of our plain-error analysis.

¶ 46                    B. Whether Defendant Was Denied a Fair Sentencing Hearing

¶ 47          Having concluded two clear and obvious errors occurred in this case, the next step in the plain-error analysis is to determine whether "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error[s] [were] so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Defendant claims this court should find plain error based on the second prong of the plain-error doctrine. Curiously, in response to defendant's plain-error argument, the State only argues the evidence was not closely balanced and does not respond to the claim the errors were so egregious that defendant was denied a fair sentencing hearing. Accordingly, the State has forfeited any argument regarding second-prong plain error.

¶ 48          We also note the State asserts any error concerning defendant's eligibility for extended-term sentencing was harmless. In response, we believe a brief discussion of harmless error and plain-error analysis is helpful here. Our supreme court has explained the two concepts as follows:

            "Though plain-error analysis normally requires the same kind of inquiry as does harmless-error review, there is an 'important difference' between the two. [Citation.] In a harmless-error analysis, *** the defendant has made a timely objection, [and] it is the State that 'bears the burden of persuasion with respect to prejudice.' [Citation.] In other words, the State must prove beyond a reasonable

- 17 -

doubt that the jury verdict would have been the same absent the error. [Citations.] The situation is different under a plain-error analysis, which applies where the defendant has failed to make a timely objection. There, '[i]t is the defendant rather than the [State] who bears the burden of persuasion with respect to prejudice.' [Citation.] 'In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.' [Citation.]" *People v. Thurow*, 203 Ill. 2d 352, 363 (2003).

In this case, defendant acknowledges he failed to object to the errors he now raises on appeal and he did not raise the issues in a timely posttrial motion. Accordingly, a harmless-error analysis, in which the State bears the burden of persuasion with respect to prejudice, is not applicable here. See *id.* Instead, we will continue with a plain-error analysis, in which defendant bears the burden of showing whether the alleged errors deprived him of a fair sentencing hearing. See *id.*; see also *Hillier*, 237 Ill. 2d at 545.

¶ 49 Under the second prong of the plain-error doctrine, the reviewing court's primary concern is "addressing unpreserved errors that undermine the integrity and reputation of the judicial process regardless of the strength of the evidence or the effect of the error" on the outcome of the proceedings. *People v. Jackson*, 2022 IL 127256, ¶ 24. "For errors that fall under the purview of the second prong of the plain error rule, prejudice is presumed." *Id.*

¶ 50 Illinois courts have found second-prong plain error where the trial court (1) relied on improper factors at sentencing (see *People v. Young*, 2022 IL App (3d) 190015, ¶ 23) and (2) sentenced the defendant under the mistaken belief he was eligible for extended-term sentencing where it arguably influenced the sentencing decision (*Myrieckes*, 315 Ill. App. 3d at 483). Accordingly, we conclude the trial court's (1) improper consideration of defendant's conduct

while on conditional discharge as an aggravating factor at sentencing and (2) mistaken belief defendant was eligible for extended-term sentencing cumulatively deprived defendant of a fair sentencing hearing and therefore constituted second-prong plain error. Because we find plain error occurred, we need not consider defendant's alternative argument trial counsel was ineffective for failing to preserve his claims of error.

¶ 51                                C. Sentencing Disposition

¶ 52            As an aside, this court would like to address the unusual nature of defendant's initial sentencing disposition. Although not an issue raised by either of the parties, this court advises against the practice of permitting criminal defendants to enter into plea agreements that include a "hybrid" sentencing arrangement—*i.e.*, a sentence to prison that is "stayed" pending the defendant's successful completion of conditional discharge or probation. (We express no opinion on the practice of staying or deferring a defendant's prison sentence pending the completion of other diversion programs that are not conditional discharge or probation.) In a recent unpublished order, this court noted, in *dicta*, how a "conundrum result[ed] from the unorthodox plea arrangement whereby [the] defendant was sentenced to conditional discharge and a prison sentence." *People v. McAdams*, 2023 IL App (4th) 220289-U, ¶ 20 (affirming the defendant's conviction and sentence where he failed to comply with the requirement of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) to file a motion to withdraw his plea). Specifically, the *McAdams* court noted it was unclear "what effect lifting the stay and imposing the sentence of imprisonment agreed to in the negotiated plea had on the sentence of conditional discharge." *Id.* In an argument the *McAdams* court found to be forfeited, the defendant claimed this "unorthodox" sentence— though not void under *People v. Castleberry*, 2015 IL 116916, ¶ 19—was nonetheless not authorized by the statute governing conditional discharge, which states that a sentencing court may

not require, as a condition of conditional discharge, a period of imprisonment over six months. *McAdams*, 2023 IL App (4th) 220289-U, ¶ 20 (discussing section 5-6-3(e) of the Unified Code (730 ILCS 5/5-6-3(e) (West 2020)). We believe such conundrums may be avoided by discontinuing the practice of allowing such plea agreements and therefore discourage it.

¶ 53                                    III. CONCLUSION

¶ 54        For the reasons stated, we vacate defendant's sentences in Jersey County case Nos. 20-CF-89 and 21-CF-79 and remand for a new resentencing hearing.

¶ 55        Vacated and remanded for further proceedings.