NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250108-U

NO. 4-25-0108

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 21, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| ADRIANA RODRIGUEZ, | ) | No. 18CF223 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding defendant's sentence was neither excessive nor imposed as punishment for her conduct while on probation.

¶ 2    In 2018, defendant, Adriana Rodriguez, was convicted of reckless homicide (720 ILCS 5/9-3(a) (West 2018)) and sentenced to 120 days in jail and 30 months of probation. Her probation was later revoked, and she was resentenced to a term of four years in the Illinois Department of Corrections (DOC). She appeals, arguing (1) the trial court improperly based the new sentence on her probation violation rather than on the original offense and (2) her sentence was excessive.

¶ 3    We disagree and affirm.

¶ 4                                I. BACKGROUND

¶ 5    On November 9, 2018, defendant was indicted on two offenses: reckless homicide,

a Class 3 felony (*id.*), and aggravated unlawful use of an electronic communication device, a Class 4 felony (625 ILCS 5/12-610.2(b-5) (West 2018)). The indictment alleged that defendant, while texting and driving, crashed into a car driven by Courtney Littell, causing Littell's death. Defendant was found guilty of both counts and sentenced to 120 days in jail and concurrent 30-month terms of probation for each offense. As part of her probation, she was prohibited from driving or violating any criminal statute of any jurisdiction and was ordered to complete 100 hours of community service within the first year of her probation.

¶ 6      On December 25, 2022, the State filed a petition to revoke defendant's probation. The petition alleged that defendant had violated her probation by (1) driving, (2) committing the offense of driving while her license was revoked, and (3) willfully failing to complete 100 hours of public service within 12 months of the entry of the probation order. Defendant admitted to the third allegation, and, in exchange, the State dismissed the first two. At the same time, the trial court vacated her conviction and sentence for aggravated unlawful use of an electronic communication device, finding that it violated the one-act, one-crime doctrine. Her conviction and sentence for reckless homicide were not impacted.

¶ 7      On January 31, 2025, the trial court held a new sentencing hearing for defendant. Two presentence investigation reports (PSIs) were presented, one from defendant's original sentencing hearing in 2021 and an updated report from 2024. The PSIs contained a summary of defendant's criminal history, including six traffic violations between 2011 and 2021. In both 2016 and 2021, defendant received traffic citations for driving 20-35 miles over the speed limit.

¶ 8      The State presented the following evidence in aggravation. First, it asked the trial court to consider the underlying facts of defendant's offense, emphasizing that in the hour before the collision, defendant was driving at an average speed of 88 miles per hour and had sent or

- 2 -

received 89 text messages. It then called Kaleb Meritt, a deputy with the Woodford County Sheriff's Office, to testify. Meritt stated he pulled over a vehicle driven by defendant on October 26, 2022, after running the vehicle's plates and discovering that the registered owner of the car, defendant, had a revoked driver's license. At the time, defendant was prohibited from driving under the terms of her probation. A video of the traffic stop was entered into evidence. Counsel for defendant did not object to the portions of the video that were played but proffered, with the State's agreement, that a male passenger in defendant's car could be seen yawning at several points in the video that were not shown.

¶ 9            After the State's evidence, relatives of Littell read victim impact statements. Additionally, the State asked the trial court to reconsider the victim impact statements that were submitted with the first PSI.

¶ 10            Defendant called numerous witnesses to testify in mitigation. Arthur Cox, her probation officer, testified that she was compliant with probation services and her reports were favorable. Chelsie Beck, defendant's bunkmate in the Logan County jail, testified that defendant saved her life by intervening when Beck had a bad reaction after taking fentanyl brought into the jail by another inmate. She further stated that defendant had offered significant support in helping her recover from her drug addiction.

¶ 11            Nicole Finney, defendant's partner of 10 years, testified that defendant had struggled emotionally since the collision. She stated that defendant frequently had nightmares, "look[ed] down on herself daily," and "[did not] feel that she deserve[d] to be happy."

¶ 12            Defendant testified on her own behalf. She stated that she was currently employed at a hospital and was pursuing further education through programs offered by the hospital. She stated that on the night she was pulled over by Meritt, she had been working with Nicole's brother,

John, in Indiana. Although John had driven the two to Indiana, on the drive back to Illinois, he began swerving and falling asleep at the wheel. She testified that John asked her to take over driving, which she did. She intended to drive to a nearby gas station and call someone to pick them up but was pulled over after approximately 10 minutes. She denied knowing that her license had been revoked but acknowledged on cross-examination that she knew the conditions of her probation prohibited her from driving.

¶ 13　　　　Defendant testified that she missed the deadline to complete her service hours because she was told after doing work remodeling a restaurant, that the hours would not count because of the restaurant's for-profit status. She completed the remainder of her public service hours after the one-year deadline by working for the LaSalle Housing Authority, picking up garbage. She also testified that she spoke at schools to inform new drivers about the dangers of distracted driving.

¶ 14　　　　The State recommended defendant be sentenced to four years in DOC. It based its recommendation on the nature of defendant's underlying offense, her decision to drive while on probation, and her criminal history. The State argued that she lacked any rehabilitative potential, and her recent violation of probation indicated that she would continue to be noncompliant with court orders. It urged the trial court to sentence her to imprisonment to protect the public and not deprecate the seriousness of the offense. The State argued, "There needs to be a consequence for not complying with probation, and resentencing to another term of probation would have a minimal consequence. Probation becomes meaningless if there are no meaningful consequences for violating that probation."

¶ 15　　　　Defense counsel noted that there was no evidence defendant had ever driven while on probation aside from the single time when she was pulled over by Merritt. He noted the

emotional impact that the collision had on defendant, her compliance with all other probation conditions, and her efforts in schooling and employment, which would be derailed by a prison sentence. He therefore asked the trial court to sentence defendant to a new term of probation.

¶ 16 The trial court stated it had considered the documentation from defendant's original trial, the PSIs, the victim impact statements, the statements on behalf of defendant, the testimony of the witnesses, and the evidence that was offered in aggravation and mitigation. It discussed defendant's criminal history, noting that it involved mainly traffic offenses but also stated, "We are here today on one of the most serious traffic offenses. And while it's true she was not driving under the influence of either drugs or alcohol, *** driving recklessly and distracted is just as dangerous as a driving under the influence." The court stated a sentence was necessary to deter others and that to sentence defendant to probation again would deprecate the seriousness of the offense, "given the fact that the defendant did have that opportunity to serve a sentence of probation." It continued,

> "The Court is a little bit concerned, again, this driving offense, Defendant acknowledges the driving in October of 2022, but also indicated that she thought that her license was valid. *** [B]ut, as was clearly pointed out *** it is part of her *** probation sentence, whether her license was revoked or valid, she was not to be driving."

¶ 17 The trial court sentenced defendant to four years in DOC. After declaring its sentence, the court admonished defendant of her right to appeal, stating, "If you desire to challenge any part of the sentence or sentencing hearing, you must file[,] prior to an appeal[,] a Motion to Reconsider the Sentence or any challenge to the sentence hearing within 30 days of today's date."

¶ 18     Counsel for defendant responded to this admonishment, noting that under *People v. Bonds*, 317 Ill. App. 3d 411 (2000), a defendant's admission that she violated the terms of her probation was not construed as a guilty plea so as to trigger the trial court's duty to admonish her pursuant to Illinois Supreme Court Rule 605(b) (eff. Apr. 15, 2024). Counsel stated, "So, based upon that, *** just as a formality, I would ask the Court to reconsider all its rulings that it's made against the defendant and the sentence. And then I intend to request a Notice of Appeal be filed ***. I'm not going to be filing any post-sentence motion."

¶ 19     When asked by the trial court for a response, the State offered, "[Defense counsel] gave me that case. I read it. It purports to say what [defense counsel] says it does. I didn't research the issue on my own. I have nothing to add either way."

¶ 20     The trial court then instructed the clerk to file a notice of appeal for defendant.

¶ 21     This appeal followed.

¶ 22                              II. ANALYSIS

¶ 23     On appeal, defendant argues that her sentence was improperly imposed as punishment for her conduct while on probation and was excessive. Additionally, she maintains that this court can review her claims even though she did not file a motion to reconsider her sentence in the trial court before appealing. We will address this issue first.

¶ 24                    A. Motion to Reconsider Sentence

¶ 25     Defendant argues that she was not required to file a motion to reconsider her sentence before appealing. She maintains that, following revocation of probation, such a motion is permissible, but is not a prerequisite to appeal. She further argues that even if she were required to file a written motion, counsel nevertheless preserved her claims on appeal by orally moving to reconsider the sentence at the conclusion of the sentencing hearing without any objection from the

- 6 -

State. Finally, she argues that even if we find her claims forfeited, we can still review them as either plain error or ineffective assistance of counsel. The State takes no stance on the issue, merely stating that it will "[defer] to this court's reasoned judgment."

¶ 26       We agree with defendant that she was not required to file a motion to reconsider her sentence before taking an appeal. In *People v. Tufte*, 165 Ill. 2d 66 (1995), our supreme court addressed this issue. There, the defendant pled guilty to violating an order of protection against his former wife. *Id.* at 67-68. He was sentenced to 60 days' incarceration and a period of conditional discharge. *Id.* at 68. He failed to appear to serve his sentence, so the State filed a petition to revoke his conditional discharge. *Id.* The defendant admitted violating the terms of his conditional discharge and was sentenced to 180 days of home detention. *Id.* Two days later, without first filing a motion, defendant filed a notice of appeal from the judgment and sentence. *Id.* at 68-69.

¶ 27       The appellate court held that the defendant's admission he violated his conditional discharge was a guilty plea governed by Rule 605(b) and he therefore should have been admonished pursuant to that rule. *Id.* at 69. Because the trial court had not admonished the defendant, the appellate court reversed its judgment. *Id.* The State appealed. *Id.*

¶ 28       The supreme court reversed the appellate court. *Id.* at 80. It found that a defendant's admission that he violated the terms of his conditional discharge should not be construed as a guilty plea so as to trigger the trial court's duty to admonish him pursuant to Rule 605(b). *Id.* at 74. It based this conclusion in part on the express language of Rules 604(b) and 605(a). *Id.* at 72. Section (b) of Rule 604 governs appeals from revocations of probation. Ill. S. Ct. R. 604(b) (eff. Apr. 15, 2024). Section (d) of Rule 604, however, governs appeals from a defendant entered upon a plea of guilty. Ill. S. Ct. R. 604(d)(d). The court found it significant that the two categories were distinct. *Tufte*, 165 Ill. 2d at 72. Similarly, Rule 605 addresses admonishments that are required when a

sentence of probation has been revoked separately from the admonishments that must be given in cases in which a judgment is entered upon a plea of guilty. Ill. S. Ct. R. 605(a), (b).

¶ 29    The court also looked at prior cases distinguishing between proceedings where a defendant had pled guilty to a criminal charge and proceedings where a defendant had admitted to violating his probation, noting its reasoning that a " 'probationer has already been convicted of the crime resulting in probation and is entitled to fewer procedural safeguards than one who has not been convicted at all." *Tufte*, 165 Ill. 2d at 74 (quoting *People v. DeWitt*, 78 Ill. 2d 82 (1979)). From its analysis, the court determined that revocation of a defendant's sentence of conditional discharge, even where it was admitted by the defendant, was not to be treated identically to proceedings in which a defendant had been found guilty based on a guilty plea. *Id.* at 72. It concluded, "If the defendant does not file a motion to vacate or reconsider, but rather seeks an immediate appeal, the reviewing court may consider the defendant's argument on its merits." *Id.* at 78.

¶ 30    We have subsequently followed *Tufte*. See *Bonds*, 317 Ill. App. 3d at 415; see also *In Interest of J.E.M.Y*, 289 Ill. App. 3d 389, 390-91 (1997). We therefore conclude that, in the instant case, defendant was not required to file a motion to reconsider as a prerequisite to appealing her sentence. We will review her arguments on the merits. See *Tufte*, 165 Ill. 2d at 78; see also *People v. Spires*, 2023 IL App (4th) 221097-U, ¶ 17 ("Rule 604(b), which governs appeals from judgments revoking probation, does not require a postsentencing motion to preserve issues for appeal.")

¶ 31                    B. Defendant's Sentence

¶ 32    Defendant raises two arguments with respect to her sentence. First, she argues that the trial court improperly used her new sentence to punish her for the conduct for which it revoked

her probation, rather than for her original offense. Second, she argues that the sentence was excessive. She asks that we reduce her sentence to the two-year statutory minimum or, alternatively, remand her case for resentencing.

¶ 33                              1. *Conduct While on Probation*

¶ 34        When a defendant is admitted to probation and that probation is later revoked, the trial court may resentence the defendant to any term that would have been appropriate for the original offense. *People v. Young*, 138 Ill. App. 3d 130, 134-35 (1985). While a court may not use a sentence to punish a defendant for the conduct which constituted the probation violation, it may consider such conduct when evaluating the defendant's rehabilitative potential. *Id.* at 135. In the past, we have acknowledged the somewhat murky nature of this rule. See *id.* at 135, 138. However, we have nevertheless consistently held that "[t]he manner in which a defendant conducts himself or herself while on probation is an appropriate consideration in any sentencing hearing." *Id.* at 142. A sentence within the statutory range for an offense will not be set aside "*unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." (Emphasis in original.) *Id.*

¶ 35        Defendant argues that the trial court's remarks at her sentencing hearing show that it sentenced her as punishment for her conduct while on probation, rather than for her original offense. She notes that the court stated its "concern" with her conduct while on probation. Citing *People v. Gansz*, 2024 IL App (4th) 230243-U, she contends that a trial court may not use a defendant's behavior while on probation to impose a harsher sentence.

¶ 36        Defendant's assessment of the law in this area is incorrect. Not only may a court consider a defendant's conduct while on probation as an aggravating factor in reaching its new

sentence after probation has been revoked, it may, in fact, impose a harsher sentence on the defendant specifically because of that conduct. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 24. We have repeatedly found this to be true. See *id.*; see also *People v. Currie*, 2023 IL App (4th) 230086-U, ¶ 35; see also *People v. Barker*, 2022 IL App (4th) 210088-U, ¶ 44; *People v. Missel*, 2023 IL App (4th) 220180-U, ¶ 25. This is so because when a defendant has violated her probation, she stands in a different position before the trial court than she did at her original sentencing hearing. *Pina*, 2019 IL App (4th) 170614, ¶ 24. This may justify imposition of a longer sentence. *Id.* It is not punishment, but rather the presence of an aggravating factor that was absent at the first sentencing hearing. To the extent that defendant argues that the imposition of a harsher sentence based on her violation of probation is inherently improper, she is wrong.

¶ 37        As stated, defendant relies on *Gansz* in support of her position. Her reliance is understandable. In *Gansz*, we determined that the trial court had improperly relied on the defendant's conduct while on conditional discharge when determining its sentence. *Gansz*, 2024 IL App (4th) 230243-U, ¶ 38. We noted that, in calling defendant's conduct while on probation the " 'most aggravating' " factor before it, the trial court "not only considered an improper sentencing factor, *but it admitted it justified a longer sentence*—thereby punishing defendant for it." (Emphasis added.) *Id.* We acknowledge this statement suggests that imposing a harsher sentence on a defendant because of his conduct while on probation was improper.

¶ 38        However, *Gansz* does not control our decision in the instant case for two reasons. First, *Gansz* is an unpublished Rule 23 order. As such, it may be cited for persuasive value but is not binding precedent. See Ill. S. Ct. R. 23(e)(1) (eff. Jun. 3, 2025). In contrast, *Pina* is a published, precedential opinion from this court in which we explicitly state that a violation of probation may justify a longer sentence than previously given. See *Pina*, 2019 IL App (4th) 170614, ¶ 24. We

- 10 -

will follow our reasoning in *Pina*, as well as our other subsequent decisions that state the same principle. See *Currie*, 2023 IL App (4th) 230086-U, ¶ 35; see also *Barker*, 2022 IL App (4th) 210088-U, ¶ 44; see also *Missel*, 2023 IL App (4th) 220180-U, ¶ 25.

¶ 39 Additionally, we find the instant case factually distinguishable from *Gansz*. As stated, the trial court in *Gansz* called the defendant's conduct while on conditional discharge the " '*most* aggravating' " factor it had to consider when deciding an appropriate sentence. (Emphasis added). *Gansz*, 2024 IL App (4th) 230243-U, ¶ 38. This caused us to conclude that the trial court used its sentence as punishment for the probation violation rather than for the original offense. The trial court made no such statement in this case. Additionally, in *Gansz*, we found that the trial court did not connect the defendant's conduct while on conditional discharge to his rehabilitative potential. *Id.* In contrast, in the instant case, the trial court found defendant's decision to drive in violation of the terms of her probation to be concerning, noting, "The Court also finds and feels that probation or conditional discharge would deprecate the seriousness of this offense given the fact that the defendant did have that opportunity to serve a sentence of probation." We find this sentence adequately establishes that the court was concerned with defendant's conduct while on probation only because it indicated her propensity to similarly squander a second opportunity at probation.

¶ 40 In summary, we reiterate that a trial court may properly consider a defendant's conduct while on probation in determining a new sentence after said probation has been revoked. It may further view this conduct as an aggravating factor that justifies a longer sentence. *Pina*, 2019 IL App (4th) 170614, ¶ 24. To do so does not inherently suggest the court is imposing the sentence as punishment for the defendant's probationary conduct.

¶ 41 Here, the trial court based its sentence on defendant's conduct while on probation,

the facts of the underlying offense, the PSIs, the victim impact statements, the statements on behalf of defendant and by defendant, and the testimony of the witnesses at the hearing. In doing so, it arrived at a sentence of four years in DOC, one year less than the maximum possible sentence. See 730 ILCS 5/5-4.5-40(a) (West 2024). Nothing in the record strongly persuades us that the trial court, *in fact*, intended its sentence to act as penalty for defendant's conduct while on probation. See *Young*, 138 Ill. App. 3d at 142. We therefore reject defendant's argument.

¶ 42        Additionally, we will address another contention made by defendant regarding this issue. Defendant argues that "[r]eviewing courts consider the remarks from both the sentencing court and the attorneys when determining whether a defendant was improperly punished for her conduct on probation." She cites to *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009), for this statement. However, our review of *Varghese* reveals that the court there never made such a statement. Indeed, the closest the *Varghese* court gets is to state that, when reviewing a sentence, we "may consider the remarks of the trial court during sentencing." *Id.* Defendant has therefore cited no pertinent legal authority for this assertion.

¶ 43        Further, we find defendant's argument on this point factually unpersuasive. She argues that the State urged the trial court to punish her for her conduct while on probation based on its statements that a probation violation needed a "consequence." She further maintains that the court adopted the State's argument based on its statement that it was "concerned" by defendant's conduct while on probation. In short, defendant attempts to attribute the State's use of the word "consequence" during its argument to the trial court and then find it was in error. We do not agree with this approach. The State merely argued that defendant's refusal to comply with the terms of her probation should preclude her from receiving a second term of probation based on her demonstrated lack of rehabilitative potential. The court then agreed. We find no error.

¶ 44                                        2. *Excessive Sentence*

¶ 45          Defendant next argues that her sentence was excessive. She points to various factors in mitigation, such as her young age at the time of the collision, her lack of serious criminal history, her success in employment and schooling while on probation, her compliance with police officers at the time of the collision, and the fact that her offense was "nonviolent" She argues that in light of these factors, the trial court's sentence was too harsh. The State, in turn, argues that defendant is merely asking us to reweigh the various sentencing factors the court considered in making its decision, which is not our role on review.

¶ 46          A trial court is granted great discretion in fashioning an appropriate sentence. *Pina*, 2019 IL App (4th) 170614, ¶ 19. A court must consider a particular defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age in order to reach a sentence that balances the retributive and rehabilitative purposes of punishment. *Id.* ¶¶ 18, 19. We will not reverse a trial court's sentence unless it constitutes an abuse of discretion. *Id.* ¶¶ 19-20. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *Id.* ¶ 20 (quoting *People v. Fern*, 189 Ill. 2d 48, 54 (1999)). We will also not substitute our judgment for that of the trial court merely because we may have weighed the factors differently. *Id.* ¶ 25.

¶ 47          We agree with the State that defendant's argument is no more than a request to reweigh the sentencing factors considered by the trial court and arrive at a sentence more favorable to her. This is not our role, and we will not do so. See *id.* Defendant is correct that there was evidence in mitigation at her sentencing hearing, but there was also evidence in aggravation. For example, despite defendant's characterization of her offense as a "nonviolent" crime, an innocent

person was killed as a result of her choice to text while driving. Additionally, defendant had an established history of driving violations. While some might have been less serious, she also received citations twice for driving between 20-35 miles per hour over the speed limit. Moreover, as we have discussed above, defendant violated the terms of her probation, diminishing her rehabilitative potential. The court was not obligated to give more weight to defendant's age or employment on probation than to the serious nature of her crime or her demonstrated lack of rehabilitative potential.

¶ 48      As stated, defendant was sentenced to one year less than the statutory maximum. Considering the evidence presented at defendant's sentencing hearing, we do not find this sentence was manifestly disproportionate to the nature of the offense, nor at great variance with the spirit and purpose of the law. Accordingly, we find no abuse of discretion.

¶ 49      As a final matter, we will address another argument raised by defendant as part of this issue. Defendant argues that, in discussing her rehabilitative potential, the prosecutor misrepresented the PSI and the evidence, which she claims violated due process and her right to a fair trial.

¶ 50      She first takes issue with the prosecutor's argument that she "was continuously driving while on probation," when in fact the evidence presented showed that she only drove on one occasion. We find defendant's argument to be a mischaracterization of the prosecutor's statement. The State did not argue that defendant was continuously driving on probation. It merely stated that defendant could not claim to be a changed person "when she continues to drive." This statement does not necessarily suggest multiple incidents of driving. It merely juxtaposes defendant's claims of rehabilitation with her choice to violate probation.

¶ 51      Defendant also argues that the prosecutor misrepresented statements contained in

her PSIs. She claims that the prosecutor argued she had no rehabilitative potential based on the fact that the PSIs did not recommend her for further services such as drug treatment or mental health treatment. She argues that, in reality, the PSI said nothing about her rehabilitative potential and made these recommendations solely because she was a law-abiding citizen with no issues to address.

¶ 52    We find the prosecutor's argument did not misrepresent the PSI. Under a section titled "Community Resources and Alternatives," the original PSI noted, "There are no community resources and alternatives to recommend." Referencing this, the prosecutor stated, "[A]t the end of this investigation, Probation concluded that there are no community resources and alternatives to recommend, *meaning that there is no need for mental health treatment, substance abuse treatment or anger management that should be ordered*." (Emphasis added). It is difficult to find defendant's argument persuasive when the prosecutor did little more than quote the language of the PSI, then elaborate in the exact way defendant now elaborates on appeal—that the lack of recommendation was based on there being no need for mental health treatment, substance abuse treatment, or anger management. It was appropriate for the prosecutor to argue that these findings in the PSI indicated "there [was] nothing to rehabilitate. Nothing for probation to supervise or monitor." We therefore further reject this facet of defendant's argument.

¶ 53    III. CONCLUSION

¶ 54    For the reasons stated, we affirm the trial court's judgment.

¶ 55    Affirmed.